UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TIMOTHY ECKERT,

                    Plaintiff,

        v.                                              **DECISION AND ORDER**

UNITED AUTOMOBILE WORKERS,                              04-CV-538S
LOCAL UNION 897, et al.

                    Defendants.


## I. INTRODUCTION

        In this action, Plaintiff Timothy Eckert ("Plaintiff" or "Eckert") alleges that Defendants

acted in concert to interfere with his rights under the Family Medical Leave Act ("FMLA"),

the National Labor Relations Act ("NLRA"), the New York State Employment Relations Act,

the Labor-Management Reporting and Disclosure Act ("LMRDA"), New York State Public

Policy, his Collective Bargaining Agreement ("CBA"), the Americans with Disabilities Act

("ADA"), and the New York Human Rights Law ("HRL"), "among others" (Docket No. 4,

¶¶19, 29, 31) by, among other things, failing to designate his time off as FMLA leave and

terminating him prior to his medical release to return to work.  This Court has jurisdiction

over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction

over his state law claims pursuant to 28 U.S.C. § 1367(a).

        As described below, each party has submitted one or more motions to this Court

for decision.

1

## II.  BACKGROUND

Plaintiff commenced this action on July 22, 2004 by filing a complaint (Docket No. 1) against International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"); International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local Union 897 ("Local 897"); Charles Gangarossa and Scott Adams (collectively, the "UAW Defendants").  One day later, on July 23 2004, Plaintiff amended his complaint (Docket No. 4) to add Defendants Ford Motor Company ("Ford"), James Krywalski and Josh Korn (collectively, the "Ford Defendants").

The UAW Defendants filed their answer to the amended complaint on October 26, 2004 (Docket No. 11), and immediately thereafter, on November 5, 2004, Plaintiff moved for an order granting a trial by jury, default judgment, summary judgment on his FMLA claim[1], a temporary restraining order and leave to amend his complaint as to the UAW Defendants (Docket No. 13).

The Ford Defendants answered on November 9, 2004 (Docket No. 14). Approximately two weeks later, Plaintiff filed an amended motion against all Defendants (Docket No. 16), seeking appointment of counsel, bifurcation, summary judgment on FMLA violations, trial by jury on his remaining claims[2], an order directing Defendants to respond

---

[1]  Although Plaintiff claimed in his supporting affidavit to be seeking summary judgment with regard to the FMLA, ADA, Breach of Duty to Represent and Tort of Outrage, his memorandum of law (Docket No. 13, Memo. pp. 3-8) is directed solely toward his FMLA claim.

[2]  Several of the "remaining claims" listed in Plaintiff's motion and amended motion are not alleged in his amended complaint; specifically, conspiracy to interfere with civil rights, willful intent to inflict emotional distress, tort of outrageous conduct, conduct contrary to United States public policy and OSHA whistleblower violations (Docket No. 13, Memo., ¶3, Docket No. 16, Affirm., ¶ 2).

to a request for admissions[3], a temporary restraining order, leave to amend his complaint and default judgment.  According to Plaintiff, after receiving the Ford Defendants' answer, he "amended the motion to include both groups of Defendants so as to address the Defendants with all the same pleadings and time frames" (Docket No. 33, pp. 2-3).  In other words, his amended motion was intended to replace the first, and the November 5, 2004 motion is now moot.

All Defendants opposed Plaintiff's motion and/or amended motion (Docket Nos. 26 and 29-32) and the UAW Defendants cross-moved for summary judgment on Plaintiff's FMLA and ADA claims (Docket No. 27).

Plaintiff filed a response to the UAW Defendants' cross-motion (Docket No. 33 and 36-38) and, in reply to the Defendants' opposition papers, moved to strike their pleadings, affidavits and documents and for default judgment (Docket No. 35).  All Defendants opposed Plaintiff's motion to strike (Docket Nos. 42, 43) and the Ford Defendants, in turn, moved to strike Plaintiff's "Response to Defendants' Local Rule 56.1 Statement of Material Facts and Response and Statement of Material Facts," or, alternatively, for leave to file a sur-reply (Docket No. 40).  On August 19, 2005, Plaintiff moved for "Expedited Hearing For Restraining Order, Access to Electronic Filing Service" (Docket No. 51).

To summarize, presently before this Court are Plaintiff's amended motion for partial summary judgment and other relief (Docket No. 16), the UAW Defendants' cross-motion for partial summary judgment (Docket No. 27), Plaintiff's motion to strike Defendants'

---

[3]  There is no indication that a request for admissions was served on Defendants prior to Plaintiff's filing his amended motion.

opposition papers (Docket No. 35), the Ford Defendants' motion to strike Plaintiff's response to Defendants' Local Rule 56.1 statement (Docket No. 40), and Plaintiff's motion for an expedited hearing for a temporary restraining order (Docket No. 51).

## III.  DISCUSSION

### A.    The Non-Dispositive Motions

#### 1.    Plaintiff's Motion for Appointment of Counsel

Plaintiff claims that he needs assistance in order to effectively proceed with his complaint because he is not familiar with matters of law or procedure (Docket No. 16, Affirm. ¶ 1).  Plaintiff had previously moved for appointment of counsel (Docket No. 3) and the motion was denied because issue had not been joined and the Court did not have sufficient information to assess Plaintiff's claims (Docket No. 4).   At this point, all Defendants have answered and various dispositive and non-dispositive motions have been filed.

It is clear that assignment of counsel in this matter is within the Court's discretion. Jenkins v. Chemical Bank, 721 F.2d 876 (2d Cir. 1983).  The Jenkins decision set forth the factors to be considered in the Second Circuit when deciding this issue as follows:  the plaintiff's ability to afford a private attorney; the efforts taken by the plaintiff to obtain a lawyer; the availability of counsel in the geographical area and the plaintiff's possible skill or lack of skill at obtaining such help as well as the number of contacts with potential counsel; examination of the merits of the plaintiff's case; plaintiff's ability to gather and present crucial facts; and the complexity of the legal issues raised in the complaint.  Id., at 880.

Of course, the Court must consider the issue of appointment carefully because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." Cooper v. A. Sargenti Co., 877 F.2d 170, 172 (2d Cir. 1989).  Thus, the Court must first look to the "likelihood of merit" of the underlying dispute, Hendricks v. Coughlin, 114 F.3d 390, 392 (2d Cir. 1997); Cooper, 877 F.2d at 174, and "even though a claim may not be characterized as frivolous, counsel should not be appointed in a case where the merits of the . . . claim are thin and his chances of prevailing are therefore poor." Carmona v. United States Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001) (denying counsel on appeal where petitioner's appeal was not frivolous but nevertheless appeared to have little merit).

The Court has reviewed the facts presented by the parties to date in light of the factors required by law.  While the parties have submitted affidavits and exhibits relating to Plaintiff's FMLA claim, there is still insufficient information to adequately assess the merits of Plaintiff's numerous remaining claims.  As for the FMLA claim, the record—in particular, the Ford Defendants' submissions suggesting that Plaintiff did not respond to their requests for medical documentation and/or return to work in a timely manner and the UAW Defendants' submissions regarding Plaintiff's disciplinary history—indicates that there are substantial weaknesses in Plaintiff's claim.  Moreover, Plaintiff has not indicated, either in his first application for appointment of counsel or in the instant motion, that he has made any effort whatsoever to obtain an attorney on his own.  To date, Plaintiff has demonstrated an ability to research statutes and regulations, draft discovery requests, engage in motion practice and gather and present relevant information to the Court.

5

Finally, the Court notes that there are a very limited number of area attorneys willing and able to handle employment cases on a *pro bono* basis.

Based on this review, the Court finds that assignment of counsel is not warranted at this time.  It is the plaintiff's responsibility, therefore, to retain an attorney or press forward with this action *pro se*.  28 U.S.C. § 1654.[4]

**2.     Plaintiff's Motion for a Jury Trial**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure:

> Any party may demand a trial by jury of any issue triable of right by a jury by (1) serving upon the other parties a demand therefore in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue, and (2) filing the demand as required by Rule 5(d).  Such demand may be indorsed upon a pleading of the party.

In this case, Plaintiff did not demand a jury trial in the caption or body of his complaint or amended complaint, but did file and serve a "motion" for a jury trial (Docket No. 13) prior to the service of the last pleading in this case—*i.e.*, the Ford Defendants' answer.  There was no need for Plaintiff to move for such relief.  At the time he filed his motion, a trial by jury was his to demand as of right.  Accordingly, this Court will treat Plaintiff's motion as a timely demand for a jury trial pursuant to Fed. R. Civ. P. 38(b).

**3.     Plaintiff's Motion for a Temporary Restraining Order (TRO)**

Pending before this Court are Plaintiff's second and third motions for a TRO (Docket

---

[4]  Plaintiff should have received a copy of the Court's booklet entitled Pro Se Litigation Guidelines when he filed his case and when his first application for appointment of counsel was denied. If he is not in possession of this booklet, the Court suggests that he call the Clerk's Office and ask that one be sent to him.

Nos. 16 and 51).  Plaintiff's first TRO motion (Docket No. 7) sought payments of $225,000 each from Ford, UAW and Local 897, and payments of $5,000 each from the individual Defendants.  The Court denied the TRO, relying on <u>Borey v. Nat'l Union Fire Ins. Co.</u>, 934 F.2d 30, 34 (2d Cir. 1991) ("'when a party can be fully compensated for financial loss by a money judgment, there is simply no compelling reason why the extraordinary equitable remedy' of a TRO should be granted") (*quoting* <u>Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.</u>, 596 F.2d 70, 72 (2d Cir. 1979)) (Docket No. 12).

Plaintiff's second motion varies only with regard to the amount of monetary relief sought.  Therein, Plaintiff requests an order directing Ford to "pay the accrued damages of $308,310" and "the UAW (presumably, Local 897) and the International UAW to each pay an equal amount of $308,310.00" (Docket No. 16, Affirm. ¶ 4(l)).  Plaintiff's request is purportedly based on a calculation of lost wages and benefits, interest at a rate of 29 percent, and liquidated damages. As was the case with Plaintiff's previous motion, he has not identified any acts by Defendants against him for which they could presently be restrained, and he is seeking only money damages which do not qualify as an irreparable harm.

Plaintiff's third motion identifies the irreparable harm as Ford's failure to reinstate him and the resultant loss of wages and benefits (Docket No. 51, Memo. pp. 3-4).  Plaintiff has increased his calculation of damages based on additional lost wages accrued since his second motion and now seeks an order directing Ford and the UAW to each deliver to him $482,460 (Docket No. 51, Affirm. p. 7).  As was previously determined, because Plaintiff can be made whole for his purported injury by a monetary judgment, he is not

entitled to the extraordinary remedy of a TRO.  Accordingly, Plaintiff's second and third motions for a TRO are denied.

### 4.     Plaintiff's Motion for Bifurcation

Plaintiff requests that this case be bifurcated pursuant to Rule 42 of the Federal Rules of Civil Procedure to allow him to obtain funds to prosecute his case effectively (Docket No. 16, Affirm., ¶2).  Plaintiff appears to be requesting that his motion for summary judgment be determined first, with his remaining claims to be considered at some later date.  Plaintiff's desired scheduling will occur as part of the normal progress of this case, without the need for a motion.  Accordingly, the motion to bifurcate is denied without prejudice.

Pursuant to Rule 42(b), a district court may order that certain claims or issues be tried separately, if separate trials will further convenience, avoid prejudice or be conducive to expedition and economy.  Fed. R. Civ. P. 42(b).  As this Rule specifically relates to trials, Plaintiff should refrain from filing a further motion to bifurcate until discovery is complete and all dispositive motions have been decided.  In the event some or all of Plaintiff's claims survive dispositive motions, any further motion to bifurcate must specify the claims or issues for which Plaintiff seeks a separate trial and the reasons for the request.

### 5.     Plaintiff's Motion for Leave to Amend

In the concluding sentence of his "affirmation," Plaintiff states, without explanation or reason, that he "moves for Leave to Amend Complaint" (Docket No. 16, Affirm., ¶ 7).

A motion seeking leave to amend is governed by Rule 15 of the Federal Rules of Civil Procedure, which states that leave "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).

Plaintiff has not submitted a proposed amended complaint for the Court's review, nor has he explained why he is seeking leave to amend. In short, this Court has no information from which it can determine whether an amendment would serve the interests of justice. Therefore, Plaintiff's motion is denied without prejudice. Plaintiff is advised that any further motion to amend must be accompanied by a proposed amended complaint.

### 6.   Plaintiff's Motion for Discovery

In his affirmation, Plaintiff moves "the Court to order one or more of the Defendants named in this motion to admit to the following," and sets forth sixteen statements for which he seeks admissions. Requests for admissions are governed by Rule 36 of the Federal Rules of Civil Procedure, which provides that:

> A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b)(1) set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request. . . . Without leave of court or written stipulation, requests for admission may not be served before the time specified in Rule 26(d).

There are a number of procedural problems with Plaintiff's request. First, Plaintiff moved for relief immediately following joinder of issue in this case. There has not yet been a Rule 16(b) conference for the purpose of entering a discovery schedule, nor has Plaintiff represented that he conferred with Defendants' counsel regarding discovery and other

matters pursuant to Rule 26(f).  A Rule 26(f) conference must occur before Plaintiff can seek discovery from Defendants and, therefore, his request for admissions is premature.[5] Fed. R. Civ. P. 26(d).

Even had the timing been appropriate for Plaintiff to serve his request for admissions, there is no indication that Plaintiff ever actually served his request on Defendants and afforded them the requisite 30 days to respond prior to bringing his motion.  Fed. R. Civ. P. 36(a).

In sum, both Plaintiff's request for admissions and his motion are premature and his motion for an order directing one or more Defendants to respond to discovery is denied.[6] Plaintiff is advised to refrain from serving discovery requests until the Court has scheduled a Rule 16(b) conference and the parties have conferred pursuant to Rule 26(f).  Further, Plaintiff should permit Defendants the time allowed under the applicable discovery rules to respond to his demands or requests prior to filing motions for discovery.

### 7.    Plaintiff's Motion for Default Judgment

Although Plaintiff's amended notice of motion indicates that he is moving for default judgment, there is no mention of default or the basis for such a motion in his supporting papers (Docket No. 16).  Rule 55 of the Federal Rules of Civil Procedure provides that:

When a party against whom a judgment for affirmative relief is sought has

---

[5] For the same reason, Plaintiff's interrogatories to the Ford Defendants, filed on December 17, 2004, are also premature.

[6] This Court notes that the Ford Defendants have treated Plaintiff's sixteen statements as a statement of undisputed material facts pursuant to Local Rule 56.1 and responded to same (Docket No. 30-1).

10

failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.

Here, all Defendants have answered Plaintiff's amended complaint (Docket Nos. 11 and 14) and all have responded to his motion for partial summary judgment (Docket Nos. 26, 27 and 29) and his motion to strike (Docket Nos. 42 and 43). Accordingly, there is no basis for this Court to enter a default judgment pursuant to Rule 55 and Plaintiff's motion in this regard is denied.[7]

### 8.    Plaintiff's Motion for Access to Electronic Filing

Included in the caption of Plaintiff's third motion for a TRO is a request for access to the Court's electronic filing system (Docket No. 51). This Court will respond to the request even though Plaintiff has not stated the reason for the request, the scope of the request, or addressed the issue at all in his supporting papers.

Pursuant to the Administrative Procedure Guide for the Western District of New York, only attorneys are permitted to file documents electronically. *See* Admin. Proc. Guide § 1.c. Pursuant to § 2.o.i.4 of the Admin. Proc. Guide, *pro se* parties, such as Plaintiff, are required to "file paper originals of all complaints, pleadings, motions, affidavits, briefs and other documents which must be signed or which require either verification or an unsworn declaration under any rule or statute." Accordingly, Plaintiff's request is denied to the extent he seeks the ability to electronically file documents.

---

[7] In his initial motion (Docket No. 13), which is superseded by his amended motion, Plaintiff cited to what he believes are erroneous statements in the UAW Defendants' answer as the basis for his default judgment motion. Even were the Court to consider those reasons, they do not provide a basis for default under Rule 55.

11

If Plaintiff wishes to have electronic access for the purpose of viewing documents, he may do so without the need for a motion by subscribing to the Public Access to Court Electronic Records ("PACER") system.   Admin. Proc. Guide § 3.b.   Information on becoming a PACER subscriber is available on the internet or from the Court Clerk's Office. In this instance, the motion is appropriately dismissed as moot.

**9.      Plaintiff's Motion to Strike**

Although captioned as a motion to strike, Plaintiff purports to bring his motion pursuant to Rule 11 of the Federal Rules of Civil Procedure (Docket No. 35).  Plaintiff contends that all of the Defendants' pleadings, affidavits and documents, except for those Plaintiff specifically identifies as accurate, are false.

Under Rule 11(b), a party presenting a pleading, motion or other paper to the court is certifying:

> to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . [that] the claims, defenses and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law . . . ; [and] the allegations and other factual contentions have . . . or . . . are likely to have evidentiary support . . ..

Fed. R. Civ. P. 11(b).  Rule 11 provides for the imposition of sanctions against parties, attorneys or law firms that violate subdivision (b), and Plaintiff urges that striking Defendants' opposition papers and entering a judgment in his favor is the appropriate sanction here.

This Court need not reach the question of what, if any, sanctions are warranted in

this case because, as the UAW Defendants correctly note[8], Plaintiff's motion does not comply with the safe harbor provisions of Rule 11.

Rule 11 provides that a motion for sanctions "shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days of the service of the motion . . ., the challenged paper . . . is not withdrawn or appropriately corrected." Fed. R. Civ. P. 11(c)(1)(A); *see* Siegel v. Hackel, 02 Civ. 610, 2002 U.S. Dist. LEXIS 9960, at *8 (S.D.N.Y.  June 3, 2002) (citations omitted).

There is nothing in Plaintiff's submissions indicating that he served his Rule 11 motion on any of the Defendants prior to filing the motion with this Court.   Rule 11 is very clear in this regard.   The person or entity accused of violating Rule 11 must be put on notice of the alleged violation and must be afforded 21 days to withdraw the challenged material.   This safe harbor period is to be provided <u>before</u> the motion for sanctions is filed and the 21 day period is mandatory and strictly construed.   Fed. R. Civ. P. 11(c)(1)(A); Hadges v. Yonkers Racing Corp., 48 F.3d 1320, 1328 (2d Cir. 1995).

Plaintiff's motion is procedurally defective and, accordingly, is denied.[9]

## 10.    The Ford Defendants' Motion to Strike

The Ford Defendants seek an order striking Plaintiff's "Response to Defendants'

---

[8]  The Ford Defendants' response adopted the UAW Defendants' argument in this regard.

[9]  Plaintiff submitted a statement of damages with his reply papers (Docket No. 49).  Therein, he details statements purportedly made by Judge Bianchini, to whom this case was referred for mediation. Mediation is a confidential process and Plaintiff is hereby directed **not** to discuss the content of mediation sessions in any papers filed with the Court.   Failure to abide by this directive may result in the imposition of sanctions.

Local Rule 56.1 Statement of Material Facts and Response and Statement of Material Facts" (Docket No. 34) on the ground that Plaintiff failed to file a statement of undisputed facts citing admissible record evidence with his notice of motion for summary judgment as required by Local Rule 56.1(a) (Docket No. 41, p. 2).

The Ford Defendants' argument is more than a bit disingenuous where, in their response to Plaintiff's motion, they note that "Plaintiff's Amended Affirmation in Support of Motion contains a list of sixteen factual allegations" and then proceed to treat the fact allegations as a statement of undisputed material facts (Docket No. 30-1). Moreover, the UAW Defendants cross-moved for summary judgment and Plaintiff was required to respond to their Local Rule 56.1(a) statement, lest the UAW Defendants' statements of material facts be deemed admitted. Accordingly, the Ford Defendants' motion to strike, or alternatively, for the opportunity to file a sur-reply, is denied.[10]

## B.    The Dispositive Motions

Plaintiff is seeking summary judgment on his FMLA claim only. The Ford Defendants oppose the motion and the UAW Defendants have cross-moved for summary judgment on the FMLA claim and also on Plaintiff's ADA claim.

### 1.    Facts

The relevant facts, as presented by the parties prior to the conduct of discovery, are

---

[10] Although the Ford Defendants chose to treat Plaintiff's "request for admissions" as a statement of undisputed material facts, Plaintiff is hereby advised that his unsupported fact allegations do not meet the requirements of Local Rule 56.1(a), in either form or substance. Plaintiff is advised to familiarize himself with the Local Rules of Civil Procedure for the Western District of New York because, as the Ford Defendants correctly note, failure to comply with Local 56.1, particularly after now having been put on notice, may constitute grounds for denial of the motion.

as follows.  Plaintiff was hired as an electrician at Ford Motor Company's Buffalo Stamping Plant on April 12, 1999 (Docket No. 16, Affirmation of Timothy Eckert ("Pl. Affirm."), ¶ 3(3); Docket No. 30-2, Affidavit of Stephen A. Burns ("Burns Aff."), ¶ 4, Ex. A).  Plaintiff was a member of UAW Local 897, the exclusive collective bargaining representative for production and maintenance employees at Ford's Buffalo Stamping Plant (Burns Aff., ¶ 3; Docket No. 26-3, Affidavit of Scott Adams ("Adams Aff."), ¶¶3-4).

On October 3, 2003, Plaintiff advised the Stamping Plant's medical department that he was scheduled for surgery to repair an umbilical hernia on October 6, 2003 (Pl. Affirm., ¶ 3(5); Burns Aff., ¶ 5, Ex. B).  During that visit, Plaintiff was examined by a registered nurse who observed mild abdominal tenderness over the umbilicus and a small protrusion (Burns Aff., Ex. B).  Plaintiff was given an appointment to see the plant physician on October 6, prior to his scheduled surgery, but did not report for his appointment (Burns Aff. ¶¶ 6-7, Ex. C).  Thereafter, the medical department apparently reviewed Plaintiff's file and questioned his contention that his hernia was the result of an on-the-job injury, but did not dispute the existence of the hernia (Burns Aff., Exs. B and C).

According to Ford, it mailed to Plaintiff a "standard leave package" on October 7, 2003 in which Plaintiff was informed that he had been granted a conditional medical leave from October 6 through October 20, 2003 and that approval or an extension of the leave was contingent on Plaintiff submitting a medical certification from his personal medical practitioner prior to his conditional leave end date of October 20, 2003 (Burns Aff., ¶ 11, Ex. D; *see also*, Adams Aff., ¶¶ 6-9; Exs. B and C).  Plaintiff was advised that if he failed to provide satisfactory medical evidence within the 13 day period between October 7 (date

15

of letter) and October 20 (end date of leave), his "reinstatement rights under the Collective Bargaining Agreement may be in jeopardy" (Burns Aff., Ex. D; Adams Aff., ¶ 8, Ex. B). Similarly, Ford's employee benefits handbook provides that "[g]enerally, leave cannot be credited as FMLA leave after the leave has ended "(Burns Aff., Ex. F).

The Defendants attest that Plaintiff's conditional leave expired on October 20, 2003 (Burns Aff., ¶ 20; Adams Aff., ¶ 9) and that Plaintiff did not return to work on October 21, 2003 (Burns Aff., ¶ 22). Thereafter, on October 31, 2003, Ford sent to Plaintiff a registered letter advising him that his leave had expired on October 20, 2003 and that he would be automatically terminated unless, within five work days after the date of the letter, he either returned to work or took specified measures to advise Ford of his continued unavailability due to illness or disability (Pl. Affirm., ¶ 3(7); Burns Aff., ¶ 22, Ex. I; Adams Aff., ¶ 10, Ex. D). A return mail receipt indicates that the October 31, 2003 letter was delivered to Plaintiff on November 7, 2003 (Pl. Affirm., ¶ 3(8); Burns Aff., Ex. I). Friday, November 7, 2003, was Plaintiff's last day to comply with the five-day notice period set forth in the October 31, 2003 letter (Burns Aff., Exs. I and H). Plaintiff did not contact Ford on or before that date (Burns Aff., ¶ 24, Ex. H; Adams Aff., ¶ 14).

On Tuesday, November 11, 2003, Plaintiff delivered to Ford's medical department a medical certification completed by his physician on a form provided by Ford (Pl. Affirm., ¶ 3(9); Burns Aff. ¶ 27; Adams Aff., ¶ 16). The medical certification form was stamped received by Ford at 8:59 a.m. (Pl. Affirm., ¶ 3(9); Burns Aff., Ex. M). The form indicates that it was prepared by Plaintiff's medical provider on October 15, 2004 and it advised that Plaintiff was unable to work for 6 to 8 weeks following his surgery (*Id*.). According to

16

Plaintiff, his surgery had taken place 5 weeks prior to his delivery of the medical certification (Pl. Affirm., ¶ 3(5)).

Ford subsequently sent Plaintiff a letter, dated November 20, 2003, advising him that his employment was terminated effective November 8, 2003, the day after the expiration of his five day notice period (Pl. Affirm., ¶ 3(11); Burns Aff., ¶ 25, Ex. K).

## 2.    Standard of Review

The party seeking summary judgment assumes the burden of demonstrating the absence of genuine issues as to any material fact.  Federal Rule of Civil Procedure 56(c) provides that summary judgment is warranted only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under governing law."  Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion."  Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).  However, to defeat a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that

there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

###    3.    Plaintiff's FMLA Claim

The FMLA provides job security for employees with "serious health conditions that prevent them from working for temporary periods."  29 U.S.C. § 2601(a)(4).  An eligible employee with a serious health condition that makes him unable to perform the functions of his position may take up to twelve work weeks of leave within a twelve month period. 29 U.S.C. § 2612(a)(1)(D).  Following leave, an eligible employee is entitled to be restored to the position held when the leave commenced or an equivalent position.  29 U.S.C. § 2614(a).  It is unlawful for an "employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, and right provided under [the Act]."  29 U.S.C. § 2615(a)(1).

The crux of Plaintiff's allegations is that Defendants interfered with his FMLA rights by terminating his employment five weeks after his hernia surgery while he was still unable to perform the duties of his position and still entitled to FMLA leave.

To prevail on a claim of interference with FMLA rights, a plaintiff must establish that: (1) he is an eligible employee as defined in 29 U.S.C. § 2611(2); (2) the defendant is an employer subject to the FMLA, as defined in 29 U.S.C. § 2611(4); (3) he was entitled to leave under 29 U.S.C. § 2612(a)(1); (4) he gave adequate notice to his employer of his

18

intention to take leave; and (5) he was denied benefits to which he was entitled under the FMLA.  Geromanos v. Columbia Univ., 322 F. Supp. 2d 420, 427 (S.D.N.Y. 2004).

### (a).   *The UAW Defendants*

The UAW Defendants have opposed Plaintiff's motion, and cross-moved for summary judgment, on the grounds that: (1) Plaintiff has not alleged or demonstrated an FMLA violation as to them; and (2) they are not Plaintiff's employer under the FMLA.  This Court finds that both grounds warrant dismissal of Plaintiff's FMLA claim against the UAW Defendants.

In his amended complaint, Plaintiff alleges that he was employed by Ford (¶ 10), he notified Ford of his need for medical leave (¶ 14), he delivered a required medical form to Ford (¶ 15), and he was unlawfully terminated by Ford (¶ 16).  The first allegation involving the UAW Defendants relates to Local 897's purported filing of a grievance on Plaintiff's behalf, following his termination by Ford (¶ 17).  Plaintiff alleges that the UAW Defendants subsequently conspired and colluded with Ford (¶ 19) and failed to pursue his grievance (¶ 24).  Plaintiff's amended motion continues in a similar vein.  There, he asserts that as "the legal Defender of the Plaintiff's contract with the Employer,"  the UAW Defendants should "know the existing labor laws" and should have done more to investigate Plaintiff's claim that he was unlawfully terminated in violation of the FMLA when they learned of his situation on November 12, 2003 (Pl. Affirm., ¶ 4, pp. 9-10).

While Plaintiff may be able to state some other claim against the UAW Defendants based on these allegations, they do not implicate a violation of the FMLA by the UAW.  *See* Taylor v. Louisville/Jefferson County Metro Government, 04CV-122-S, 2005 U.S. Dist.

Lexis 11742, at *8-9 (W.D. Ky. June 14, 2005) (dismissing claim for violation of FMLA against the plaintiff's union where plaintiff's complaint, brief and supporting documents failed to implicate the union in the purported violation).

Even were that not the case, this Court finds that the UAW Defendants are not Plaintiff's "employer" within the meaning of the FMLA.   Pursuant to 29 U.S.C. § 2611(4)(A)(ii), the term "employer" includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer."  As Plaintiff himself intimates in his amended complaint and motion, the UAW's role is precisely the opposite; it is to represent <u>his</u> interests and act as <u>his</u> "legal defender" relative to his employment at and termination by Ford.  *See* <u>Scamihorn v. General Truck Drivers</u>, 282 F.3d 1078, 1081 n.2 (9th Cir. 2002) (noting district court's dismissal of FMLA claim against union on ground that union was not an "employer" under the Act).  Such a conclusion is consistent with the construction of other federal employment statutes.  Other statutes that permit actions against labor organizations do so not by including unions within the definition of employer, but by specifically providing for suits against labor organizations <u>in addition to</u> suits against employers.  *See, e.g.,* 42 U.S.C. § 2000e-2 (unlawful labor organization practices are distinct from unlawful employer practices under Title VII); 42 U.S.C. § 12111(2) (labor organizations are expressly included in the definition of a "covered entity" within the meaning of the ADA).  The FMLA, in contrast, is silent as to labor organizations.

Because Plaintiff has not alleged any involvement by the UAW Defendants in the purported denial of FMLA leave or his termination from Ford, and because the UAW Defendants are not Plaintiff's employers within the meaning of the FMLA, Plaintiff's

summary judgment motion is denied and the UAW Defendants' cross-motion for summary judgment is granted as to Plaintiff's FMLA claim.

### (b).   *The Ford Defendants*

The Ford Defendants do not dispute that they are an employer and that Plaintiff was an eligible employee within the meaning of the FMLA.  However, this does not mean that an eligible employee can simply stop reporting to work after requesting leave.  Section 2613(a) of Title 42, United States Code, provides that: "[a]n employer may require that a request for leave . . . be supported by a certification issued by the health care provider" and  "the employee shall provide, in a timely manner, a copy of such certification to the employer."

The related Department of Labor regulations provide, in pertinent part, that:

> [A]n employee must provide certification . . . within the time frame requested by the employer (which must allow at least 15 days after the employer's request) or as soon as reasonably possible under the particular facts and circumstances.  . . .  If an employee fails to provide a medical certification within a reasonable time under the pertinent circumstances, the employer may delay the employee's continuation of FMLA leave.  If the employee never produces the certification, the leave is not FMLA leave.

29 C.F.R. § 825.311(b).

Plaintiff's summary judgment motion is premised upon his unsworn assertions that he did not receive notice from Ford regarding its medical certification requirement until November 7, 2003, and that he submitted the completed form as soon as reasonably possible thereafter, on November 11, 2003.[11]  Plaintiff alleges that the Ford Defendants

---

[11]   While Plaintiff claims not to have received the blank medical certification form until November 7, 2003, the completed form is dated October 15, 2003.

violated his FMLA rights when they terminated him on November 8, 2003, while he was entitled to FMLA leave.

According to the Ford Defendants, Plaintiff was first provided notification regarding the need to submit a certification and a blank medical certification form on October 7, 2003.  After Plaintiff failed to submit a completed form in a timely manner, Ford sent a further notice on October 31, 2003, provided Plaintiff five additional business days in which to respond and warned him that his employment would be terminated automatically if he did not do so.  After Plaintiff failed to return to work or provide a medical certification within the time specified, his employment terminated.   Following his termination, Plaintiff submitted a completed medical certification form.  In short, the Ford Defendants' position is that Plaintiff had ample opportunity to comply with its requirement, and it was his unreasonable failure to do so that triggered his termination.  Ford has submitted sworn affidavits, letters to Plaintiff, and provisions from its employee handbook and its collective bargaining agreement with the UAW, among other things, in support of its position.

The Ford Defendants have succeeded in raising a question of fact regarding Plaintiff's purported good faith attempt to timely submit his medical certification. Accordingly, Plaintiff's motion for summary judgment as to the Ford Defendants is denied.

**4.    Plaintiff's ADA Claim**

The UAW Defendants cross-moved for dismissal of Plaintiff's ADA claim on the ground that they were "never named in an EEOC or New York State Division of Human Rights charges, and because Plaintiff did not obtain a right to sue letter" (Docket No. 26-1, p. 11).  In response to the cross-motion, Plaintiff submitted copies of an EEOC Charge

22

against UAW Local 897 dated August 7, 2004 and a corresponding Dismissal and Notice of Rights dated September 3, 2004 (Docket No. 36).  In light of these submissions, the UAW Defendants have "withdrawn their cross-motion made on that basis, without prejudice to re-visiting the issue after discovery, if necessary" (Docket No. 39-1).

Although they have now withdrawn the only ground upon which their cross-motion was premised, the UAW Defendants "continue to contend that their cross motion . . . should be granted because Plaintiff never contends that he has a disability within the meaning of the ADA."  The UAW Defendants can not "continue" to assert an argument that is presented for the first time in their reply memorandum.  As Plaintiff has not had an opportunity to respond to this entirely new basis for dismissal, its consideration would be premature.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiff's motion for appointment of counsel, bifurcation, partial summary judgment, discovery, a temporary restraining order, leave to amend his complaint and default judgment is denied, as is his subsequent motion for a temporary restraining order and access to the Court's electronic filing service.  Plaintiff's motion for a jury trial is hereby treated as a timely request for a jury trial pursuant to Fed. R. Civ. P. 38(b) and the motion is therefore moot.  Plaintiff's motion to strike Defendants' pleadings, affidavits and documents and for default judgment is denied.  The Ford Defendants' motion to strike Plaintiff's response to the Defendants' statements of undisputed facts is denied.  Finally, the UAW Defendants' cross-motion is granted as to the FMLA claim against them and is withdrawn without prejudice as to the ADA claim.

**ORDERS**

IT HEREBY IS ORDERED, that Plaintiff Timothy Eckert's motion for appointment of counsel, bifurcation, partial summary judgment, discovery, a temporary restraining order, leave to amend his complaint and default judgment (Docket No. 16) is DENIED; his motion for a jury trial (Docket No. 16) is DISMISSED as moot; his motion to strike Defendants' opposition papers and for default judgment (Docket No. 35) is DENIED; and his motion for a temporary restraining order and access to the Court's electronic filing system (Docket No. 51) is DENIED.

FURTHER, the cross-motion of Defendants International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"); International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local Union 897 ("Local 897"); Charles Gangarossa and Scott Adams (Docket No. 27) for partial summary judgment is GRANTED as to the FMLA claim only, and is withdrawn without prejudice as to the ADA claim.

FURTHER, the motion of Defendants Ford Motor Company, James Krywalski and Josh Korn to strike Plaintiff's response to Defendants' Local Rule 56.1 statements (Docket No. 40) is DENIED.

SO ORDERED.

Dated:      August 29, 2005
            Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge

24