UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TIMOTHY ECKERT,

                        Plaintiff,

      v.                                      **DECISION AND ORDER**

UNITED AUTOMOBILE WORKERS,                     04-CV-538S
LOCAL UNION 897, et al.

                        Defendants.

## I. INTRODUCTION

On July 22, 2004, Plaintiff Eckert, acting *pro se*, commenced this action against United Automobile Workers International Union, United Automobile Workers Local Union 897, Charles Gangarossa, Local 897's President, and Scott Adams, UAW International Representative (the UAW Defendants). The following day, July 23, 2004, Plaintiff filed an Amended Complaint to add Defendants Ford Motor Company, James Krywalski, Josh Korn and "Monica" (together, the Ford Defendants). Essentially, Eckert alleges that Defendants acted in concert to interfere with his rights under the Family Medical Leave Act ("FMLA"), the National Labor Relations Act ("NLRA"), the New York State Employment Relations Act, the Labor-Management Reporting and Disclosure Act ("LMRDA"), New York State Public Policy, his Collective Bargaining Agreement ("CBA"), the Americans with Disabilities Act ("ADA"), and the New York Human Rights Law ("HRL"), "among others." (Docket No. 4, ¶¶19, 29, 31.) They are alleged to have interfered with his rights by, among other things, terminating his employment prior to his medical release to return to work and thereafter failing to pursue his reinstatement.

1

At this juncture, all of the claims against the Ford Defendants have been dismissed (Docket No. 155)[1], as has the FMLA claim against the UAW Defendants (Docket No. 52). Presently before the Court is the UAW Defendants' Motion for Summary Judgment seeking dismissal of the remaining claims against them. For the reasons stated below, the motion is granted and the Amended Complaint is dismissed.

## II.  BACKGROUND

### A.  The Undisputed Facts

The gravamen of Eckert's claims against the UAW defendants is that, after Ford terminated him in violation of the FMLA and the governing CBA, the Union Defendants violated their duty of fair representation when they declined to take his grievance to arbitration. The relevant facts are taken from the UAW's Statement of Material Facts not in Dispute, and the documents cited therein. Plaintiff's opposition to the Union's motion has been fully reviewed and considered in ascertaining the following facts.

Eckert was hired as an electrician at Ford Motor Company's Buffalo Stamping Plant on April 12, 1999, and remained employed until his discharge in November 2003. (Docket No. 176-3, "Defs' Stmt." ¶¶ 4-5.) During Eckert's tenure, Ford documented numerous instances of absence without leave, and disciplined him on multiple occasions. (*Id*. ¶ 9.) On Friday, October 3, 2003, Eckert went to Ford's medical department and advised that he was scheduled for surgery to repair an umbilical hernia on Monday, October 6, 2003. (*Id*. ¶ 11.) He did not provide any medical documentation at that time. (Docket No. 30-2

---

[1] "Monica," for whom no summons was returned, has not yet been terminated from the case docket. When this Court dismissed Eckert's claims against the Ford Defendants based on his failures to comply with court orders and to prosecute, such dismissal necessarily included "Monica," as well.

¶ 6.) Eckert did agree to return to the Plant on October 6, 2003, before his surgery, and be seen by the Plant physician, but did not keep his scheduled appointment. (*Id*. ¶¶ 6-7.) Nevertheless, based on Eckert's representations, Ford authorized a two-week conditional leave, from October 6 through 20, 2003. (*Id*. ¶ 8.)

At that time, Eckert was a member of UAW Local 897, the exclusive collective bargaining representative for the Buffalo Plant's production and maintenance employees. (Defs' Stmt. ¶ 6.) He did not advise UAW of his upcoming surgery. (*Id*. ¶ 12.) The UAW is aware that Ford's standard operating procedure for an employee who leaves work for a medical reason without first providing medical documentation is to grant conditional leave for up to two weeks, during which time the employee is expected to submit satisfactory medical documentation of the need for and duration of leave. (*Id*. ¶¶ 15-16.) After the supporting medical documentation is submitted, an employee is considered to be on approved—rather than conditional—leave. (Docket No. 30-2 ¶ 9.)

On October 7, 2003, Ford's Hourly Personnel Office mailed Eckert its standard leave package including, among other things, a letter explaining the terms of his conditional leave, Ford Form 5166—"Medical Certification Form for HOURLY Employees Request for leave of Absence for Employee's Own Health Condition," and a notice of FMLA rights. (*Id*. ¶¶ 11-15.) Ford's FMLA notice expressly requires that an employee complete and return a medical certification form "for the initial leave or an extension, within 15 calendar days of the Company's written request," and goes on to list potential consequences of noncompliance, including termination. (*Id*. Ex. D.)

Eckert acknowledges receiving a package from Ford by mail in about mid-October

2003, but does not recall the documents it included.  (Defs' Stmt. ¶¶ 18-21.)  He does remember receiving a Ford Form 5166, but cannot recall exactly when that was.  (Docket No. 176-2 "Tr. 1" at 62.)  His physician completed that form and signed and dated it October 15, 2003 (Docket No. 30-2 Ex. M), but Eckert failed to return the completed form to Ford within the requisite 15-day period (Defs' Stmt. ¶ 27).

Ford and the UAW have been parties to a series of collective bargaining agreements, which govern the terms and conditions of employment for maintenance workers, such as Eckert.  (*Id*. ¶¶ 6-7.)  The relevant agreement here (the CBA), was effective September 29, 2003 through September 14, 2007.  (*Id*. ¶ 7.)  Article VIII, Section 5 of the CBA provides, in pertinent part:

> **Loss of Seniority**
> Seniority shall be broken for the following reasons:
>
> * * * * * *
>
> 4.  **(Failure to Report)**
>     If the employee does not, within five (5) working days (excluding Saturdays, Sundays and Holidays) after notice to report has been sent to him/her, either report for work or give a satisfactory reason for his/her absence, unless it is not possible for him/her to comply with either of these requirements; and provided at least ten (10) working days have elapsed since his/her last day worked.
>
> * * * * *
>
> In cases where conditional or approved medical leaves of absence have expired, the Company may send a notice to report.
>
> * * * * *
>
> Disputes as to . . . the reasonableness of the employee's failure to respond to a notice where his period of absence can be justified are subject to the regular Grievance Procedure.

4

(Docket No. 27-3 Ex. E.)

On Friday, October 31, 2003, Ford, having heard nothing from Eckert, sent him a 5-day notice to report by certified mail, return receipt requested, stating that his conditional leave had expired on October 20, 2003 and that his "employment record will be automatically terminated with possible loss of seniority if you do not return within 5 working days (excluding Saturdays, Sundays and Holidays) of the date of this letter." (Defs' Stmt. ¶ 30.) Eckert signed for the letter on November 7, 2003. (*Id*. ¶ 31.) He did not report to work on that date. The following Tuesday, November 11, 2003, Eckert delivered to Ford's medical department the completed Form 5166 dated October 15, 2003. (*Id*. ¶¶ 23, 34.) He was then told that his employment had been terminated on November 8, 2003, due to his failure to report within five days of the October 31, 2003 notice. (*Id*. ¶ 34.)

Eckert went to the Local 897 union hall to lodge a grievance with regard to his termination. (*Id*. ¶ 36.) The Union prepared a grievance on his behalf which reads:

> The Union and the aggrieved protest the termination of the aggrieved employee. The aggrieved employee was terminated for not responding to a 5 day quit notice. The facts will show that the aggrieved did respond in a timely manner. Therefore, the union and the aggrieved demand that the aggrieved employee be reinstated back on the active rolls and be paid all lost monies, and made whole again.

(Docket No. 176-4 Ex. A.) Eckert signed and received a copy of the grievance. (*Id*.)

The Union prepared a fact sheet based on Eckert's recitation of events, and pursued his grievance through the third stage of the grievance procedure. In sum, the Union argued that Eckert's response to the 5-day notice was reasonable and timely in that Eckert believed his physician had sent Ford a medical certification for his absence, he was recuperating at a location other than his residence and did not return home until the

evening of November 6, 2003, it was only then that he received notice of an attempted certified mail delivery, he went to the post office the following day to find the October 31, 2003 letter, he immediately followed up with his physician, and then delivered the medical paperwork on November 11, the same day it was produced to him. (*Id*. Exs. A and B.) Ford repeatedly denied the Union's requests for reinstatement, stating that Eckert had failed to comply with the 5-day notice and his low level of seniority and unsatisfactory work ethic and disciplinary record did not merit reinstatement. (*Id*. Ex. B.) In its third-stage disposition, Ford also noted that Eckert "has previously been out on medical leave and is aware of his reporting responsibilities." (*Id*. Ex. B, Ford letter dated June 7, 2004.) On June 7, 2004, the Union notified Eckert that it was unable to secure his reinstatement, had withdrawn the grievance, and would not pursue the matter further. (*Id*. Union letter dated June 7, 2004.)

While his grievance remained pending, on or about April 14, 2004, Eckert filed charges against the Union with the National Labor Relations Board contending that the Union was "bargaining away [his] rights to the Ford/UAW collective bargaining agreement." (Docket No. 27-3 Ex. L.) Eckert requested that the NLRB withdraw the charge after it informed him the charge would be dismissed for lack of merit. (Docket Nos. 4 ¶ 27; 27-3 Ex. M.)

On June 7, 2004, Eckert appealed Local 897's decision to withdraw his grievance to the International Executive Board ("IEB"), which denied his appeal. (Docket No. 176-4 Ex. E at 6.) Eckert then appealed the IEB decision to the International Union's Public Review Board ("PRB"), claiming the Local's conduct in withdrawing his grievance lacked

a rational basis. (*Id*. at 1.)

The PRB may disturb a Local's decision to withdraw a grievance only where evidence supports a finding that the grievance was improperly handled because of fraud, discrimination or collusion with management, or that the disposition was devoid of a rational basis. (*Id*. at 13.) The PRB considered the parties' arguments and the record, and found, among other things, that Eckert received all forms needed to comply with his obligations under the FMLA and was given two opportunities to justify his leave, but failed to take advantage of the protections provided him. Based on the evidence presented, the PRB concluded there was no merit to Eckert's claim that the Local Union was negligent in protecting his FMLA rights, and so its decision to withdraw his grievance could not be said to lack a rational basis. Accordingly, on September 6, 2005, the PRB affirmed the IEB's decision (*Id*.)

Shortly after Eckert appealed Local 897's decision to the IEB, he commenced this action based on the same facts and circumstances. Essentially, he claims that the Ford Defendants (now dismissed from this case) and the Union Defendants conspired to interfere with his rights under the FMLA, various labor laws, and the CBA.

### III.  DISCUSSION

**A.    Standard of Review**

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under governing law." *Id*.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). However, to defeat a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

**B.     The Duty of Fair Representation**

In his Amended Complaint, Eckert alleges that "the UAW had not filed any Grievance with Ford, but had only pretended to go through the motions." (Docket No. 4 ¶ 29.) He then testified during his deposition that the Union violated the NLRA[2] because it was required to represent him and did not do so with regard to his discharge. (Tr. 2 at

---

[2] The question posed to Eckert was "In what way did the union violate the NLRB?" The Court assumes this was intended and understood as referring to the NLRA, which Eckert referenced in his Complaint.

38.)

The UAW has produced evidence and testimony, which Eckert does not now dispute, showing that Local 897 did file a grievance on Eckert's behalf and pursued his reinstatement through the third step of the grievance procedure. The only possible basis remaining for Eckert's claim that the Union breached its duty of fair representation is its decision not to pursue the grievance to arbitration. In this regard, Eckert argues that the decision to withdraw his grievance was "arbitrary and capricious," and that the Union repeatedly sought to "avoid responsibility of their duty to fairly represent him." (Docket No. 187 at 5.)

An employee may bring a complaint in federal court alleging both that his employer breached a collective bargaining agreement and that his union breached its duty of good faith in redressing his grievance against the employer. This is precisely what Eckert has done.

> The suit against the employer rests on § 301 [of the LMRA], since the employee is alleging a breach of the collective-bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. Yet the two claims are inextricably interdependent. To prevail against either the company or the Union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union. The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both. The suit is thus not a straightforward breach-of-contract suit under § 301, . . ., but a hybrid § 301/fair representation claim, amounting to a direct challenge to the private settlement of disputes under [the collective-bargaining agreement].

DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164-65, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983) (internal citations and quotation marks omitted).

A union breaches its duty of fair representation when its conduct is arbitrary, discriminatory, or in bad faith, Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 44, 119 S. Ct. 292, 142 L. Ed. 2d 242 (1998), and there is a causal connection between its wrongful conduct and the plaintiff's injuries, Spellacy v. Airline Pilots Ass'n-Int'l, 156 F.3d 120, 126 (2d Cir. 1998). "A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational." Id. at 129 (quoting Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67, 111 S. Ct. 1127, 113 L. Ed. 2d 51 (1991)) (other internal quotation marks omitted). "This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." Marquez, 525 U.S. at 45-46. Thus, a union's duty of fair representation is not breached where the union fails to process a meritless grievance, fails to process a grievance due to error in evaluating its merits, Cruz v. Local Union No. 3, 34 F.3d 1148, 1153-54 (2d Cir. 1994), engages in mere negligent conduct or errors in judgment, Barr v. United Parcel Serv., Inc., 868 F.2d 36, 43-44 (2d Cir. 1989), or decides not to arbitrate a grievance, see Vaca v. Sipes, 386 U.S. 171, 191-92, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967) (finding individual employee does not have "absolute right" to arbitration and discussing negative consequences of system where individuals could compel arbitration).

Here, the Union Defendants have offered and documented several reasons supporting the decision to withdraw Eckert's grievance. First, the Union met with Ford on several occasions to advocate for Eckert's reinstatement, without success. By Eckert's own admission, he received Ford's 5-day notice within the five day period, but did not make any attempt to report to work or contact Ford prior to its expiration. The Union had a

lengthy meeting with Eckert in late May 2004 to attempt to ascertain additional facts that might assist him. For example, Eckert was asked whether he was on pain medication following his surgery or whether there were any other circumstances that might have prevented him from timely reporting to Ford. Eckert merely responded that he had interpreted the 5-day notice incorrectly. (Docket No. 176-4 Ex. E at 5-6.) Eckert did raise concerns regarding Ford's FMLA compliance, which the Union then raised with Ford during the next meeting on his grievance. Ford rejected the argument and again denied reinstatement. (*Id*. Ex. B, notes of June 3, 2004 meeting.) Based on Ford's records, Eckert's own statements, and the timing of events, the Union was convinced Ford likely had provided Plaintiff proper FMLA notice. Only after it believed it had exhausted all supportable arguments did the Union decide to withdraw the grievance.

The Union's reasons for the withdrawal are well-founded and supported by the record, and Eckert has offered no proof suggesting the Union acted in a manner that was so outside the range of reasonableness as to be irrational. Because Eckert has not presented any concrete evidence that would create a triable issue of fact as to whether the Union breached its duty of fair representation, summary judgment for the Union Defendants is warranted.

**C.     The Americans with Disabilities Act Claim**

Eckert makes several references to the ADA in his Amended Complaint. It is unclear whether he wishes to assert this claim against Ford, the UAW, or both. The Amended Complaint contains no fact allegations relating to a disability, nor does he allege that the Union discriminated against him based on a disability.

A plaintiff claiming that a union discriminated against him based on a disability in representing his interests is required to show: "(1) that the company committed a violation of the collective bargaining agreement with respect to the plaintiff; (2) that the Union permitted the breach to go unrepaired, thus breaching its own duty of fair representation; [and] (3) that there was some indication that the Union's actions were motivated by [discriminatory] animus." Nweke v. Prudential Ins. Co. of Am., 25 F. Supp. 2d 203, 221 (S.D.N.Y. 1998) (citations omitted); Lee v. ITT Std., 268 F. Supp. 2d 315, 336 (W.D.N.Y. 2002).

As already noted, Eckert has not raised a question of fact sufficient to avoid dismissal of his duty of fair representation claim, and thus has not raised a triable issue as to the second element of his ADA claim. In that context, Eckert had the opportunity to offer evidence as to the Union's motivation—*i.e.*, that its conduct was arbitrary, *discriminatory*, or in bad faith, Marquez, 525 U.S. at 44—but failed to do so. Thus, he has not raised a triable issue as to the third element of his ADA claim. Absent a question of material fact regarding the Union's actions and motivation, summary judgment is warranted on this claim, as well.

**D.    The Labor Management Reporting and Disclosure Act (LMRDA) Claim**

The LMRDA imposes duties on labor organizations and officers, and also guarantees a number of specified rights to all union members. Among other things, the LMRDA provides standards for the reporting and disclosure of certain financial transactions and administrative practices of labor organizations, the protection of union funds and assets, the administration of trusteeships, and the election of union officers. Rights

guaranteed to union members include those relating to a union's discipline or expulsion of a member.

Here, the Amended Complaint conclusorily alleges that Ford and the Union conspired to interfere with Eckert's rights under the LMRA. It does not identify the particular rights Eckert believes were violated, nor does it or state how the Union violated his rights. When asked at his deposition: "In what way did the union violate the LMRDA?" Eckert was unable to articulate any basis for a claim, stating only that "I don't have my legal resources here." (Docket No. 176-6 at 17; Tr2 at 38.)

From pleading, through discovery and dispositive motions, Eckert has not identified any factual or legal basis for a LMRDA violation. Because no triable issue of fact exists, summary judgment is warranted.

### E.    The State Law Claims

Eckert additionally alleges that Ford and the Union conspired to violate his rights under NYSERA, the NYHRL, and New York Public Policy. The Union Defendants argue that each of these claims is preempted by Section 301 of the LMRA[3] and, alternatively, that Eckert has not articulated any basis for the claims.

Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the

---

[3] Defendants also contend that Section 301 preempts Eckert's ADA and LMRDA claims. However, they provide argument and authority relative to the state law claims only.

citizenship of the parties." 29 U.S.C. § 185(a).  It is well-settled that § 301 also contemplates suits by individual employees to vindicate "uniquely personal" rights that find their source in a collective bargaining agreement.  Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 562, 96 S. Ct. 1048, 47 L. Ed. 2d 231 (1976).

Actions within the scope of § 301 are controlled by federal law and the Supreme Court has described the pre-emptive force of § 301 as "so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization.  Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." Franchise Tax Bd.of Ca. v. Construction Laborers Vacation Trust, 463 U.S. 1, 23, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983) (internal quotation marks omitted).

New York's HRL makes it unlawful "[f]or a labor organization, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, or marital status of any individual, to exclude or to expel from its membership such individual or to discriminate in any way against any of its members . . . ." N.Y. Exec. Law § 296(1)(c).  To the extent Eckert attempts to assert a state law discrimination claim here, it necessarily relates to the Union's alleged failure to fully pursue his grievance.  However, the vast majority of courts in this Circuit have held that a union member's right to be treated equally with regard to the grievance process is guaranteed by § 301 of the LMRA as an aspect of the union's duty of fair representation. As such, the courts have concluded that it was Congress's intent to preempt state action in this regard.  *See* Landgord v. Int'l Union of Operating Eng'rs, Local 30, 765 F. Supp. 2d

486, 507-508 (S.D.N.Y. 2011) (collecting cases); *see also*, <u>Hess v. B&B Plastics Div. Of Metal Cladding, Inc.</u>, 862 F. Supp. 31, 33-34 (W.D.N.Y. 1994) (courts have looked to the nature of coverage of a § 301 hybrid action and found that Congress intended preemptive coverage of any type of discrimination by union against a member, at least in the context of the duty of fair representation).

The NYSERA's[4] stated purpose is to protect employees' rights of association and self-organization, free from interference, restraint, or coercion of their employers. N.Y. Lab. Law § 700. Again, Eckert is unable to state how the Union Defendants violated his rights in this regard. Assuming Eckert believes this state statute provides him relief based upon the Union's decision to withdraw his grievance, he does not identify any "representational" rights that are distinct from those that exist under § 301. As such, even assuming Eckert could state a claim, such claim would be preempted.

Finally, Eckert does not identify any state public policy that has been violated, outside of his generalized references to state statute. Accordingly, the Court finds that all state law claims are preempted and must therefore be dismissed.

## IV. CONCLUSION

For the reasons stated, the Union Defendants' Motion for Summary Judgment is granted in it entirety. As previously noted, the Ford Defendants were previously dismissed from this case. Accordingly, this case is dismissed in its entirety.

---

[4] The Court presumes that Eckert is referring to the New York State Labor Relations Act. N.Y. LAB. LAW §§ 700 *et seq*.

## V.  ORDERS

IT HEREBY IS ORDERED that the Motion for Summary Judgment filed by Defendants United Automobile Workers International Union, United Automobile Workers Local Union 897, Charles Gangarossa, and Scott Adams (Docket No. 176) is GRANTED.

FURTHER that the Clerk of Court is directed to enter judgment in favor of Defendants and to close this case.

SO ORDERED.

Dated:	February 20, 2012
	Buffalo, New York

                                         /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                             Chief Judge
                                    United States District Court